People v Johnson (2025 NY Slip Op 51425(U))

[*1]

People v Johnson

2025 NY Slip Op 51425(U)

Decided on September 10, 2025

Criminal Court Of The City Of New York, New York County

Coleman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 10, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York, Plaintiff,

against
Tanya Johnson, Defendant.

CR-035712-24N

Alvin L. Bragg, Jr., District Attorney, New York County (Matthew Boutros of counsel), for plaintiff. 
Johnathan Cartelli, Middle Village, for defendant.

Ilona B. Coleman, J.

The defendant moves for leave to renew her motion to strike the People's March 4, 2025 certificate of compliance (COC) and certificate of readiness (COR), which Judge Rachel Pauley previously denied on June 3, 2025, and upon renewal for dismissal pursuant to CPL §§ 30.30 (1) (b) and 170.30 (1) (e). As grounds for renewal, the defendant argues that the People possessed but failed to disclose hospital records prior to filing their COC, and that the People failed to enforce a subpoena for treatment records from the New York City Fire Department (FDNY). The People oppose, arguing first that these grounds are not properly raised in a motion to renew, and second that the alleged lapses have no bearing on their diligence.
The People are correct on both counts, and the defendant's motion is denied in all respects.
I. Relevant Facts
The defendant was arraigned in this case on December 5, 2024. The People filed their initial COC and COR on March 4, 2025. Then, realizing that they had failed to disclose a significant amount of discovery, the People filed a supplemental COC and a new COR on March 5, 2025. 
On April 14, 2025, the defendant filed a written motion challenging the People's COCs and CORs. The defendant argued that the first COC was invalid because the People had failed to comply with their discovery obligations. As to the second COC, though, the defense did not raise any argument regarding the People's substantive compliance with their discovery obligations, arguing instead that their second COC was invalid "on its face" for failing to explain why the newly disclosed evidence was not previously produced.
Judge Pauley decided the defendant's motion on June 3, 2025. The decision granted the [*2]motion to strike the March 4 COC but denied the motion to strike the March 5 COC. As to the latter COC, the court rejected the defendant's highly technical analysis and noted that the defendant had not "raise[d] any objections to the People's discovery compliance." Ultimately, the court charged the People with eighty-nine days of speedy trial time and denied the motion to dismiss.
On June 3, 2025, the case was adjourned for hearings and trial to July 16, 2025. On June 24, 2025, defense counsel asked the People about the complainant's outstanding medical records. In their initial discovery, the People produced two subpoenas that they had issued, one directed to New York Presbyterian Hospital (dated February 18, 2025 and returnable a week later) and the other to FDNY (dated February 19, 2025, also returnable a week later). The production did not include any responsive records, which the People listed in their March 3, 2025 automatic disclosure form (ADF) as "currently unavailable." Despite having actual notice that these records were outstanding, defense counsel did not inquire about them prior to filing their April 14 motion to dismiss, nor did counsel raise the issue of the outstanding records in the motion.
As it turns out, the People had received the records from New York Presbyterian Hospital on February 25, 2025, but they did not maintain possession of the records. Rather than sending the subpoenaed records to the court, as directed in the subpoena, the hospital sent the records directly to the People. In accordance with the standard practice in this courthouse, the People immediately transmitted the records to the court for in camera review prior to production. On March 17, 2025, the court completed its review, and the People collected the records from the court the following day. This was two weeks after the People's COC and almost a month before the defendant filed her motion to dismiss. The People do not explain their failure to promptly disclose the medical records beyond describing the lapse as an inadvertent oversight.
On July 16, 2025, the People answered ready for trial, and defense counsel again objected to the People's COC, this time based on the People's failure to disclose the complainant's medical records prior to filing their COC. Defense counsel indicated that he intended to file a motion to renew the prior motion to dismiss on this basis, and because Judge Pauley no longer sits in New York City Criminal Court, the motion to renew was assigned to the undersigned judge. The court set a motion schedule, and on August 1, 2025, the defendant filed the instant motion.
On August 1, 2025, the People received FDNY records in response to their subpoena. On August 20, 2025, they realized they had received the records in error — as with the prior subpoena returns, the records should have been produced to the court — and the People transmitted the records to the court for review. On August 25, 2025, the court released the records to the People, and the People promptly provided the records to the defense. 
II. Renewal under CPLR § 2221 (e)
A motion for leave to renew must be "based upon new facts not offered on the prior motion that would change the prior determination" and must present "reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [2], [3]), though the failure to provide a reasonable justification may be excused in the interest of justice (Mejia v Nanni, 307 AD2d 870 [1st Dept 2003]). Here, the defendant proffers two new facts: first, that the People had the complainant's hospital records in their possession prior to filing their COC but did not provide the records to the defense; and second, that the People failed to compel the FDNY to comply with their subpoena between its return date (February 26, 2025) and the date on which they received the returns (August 1, 2025). These facts are insufficient grounds for a motion to [*3]renew, both because the defendant has not provided a reasonable justification for failing to raise them (CPLR 2221 [e] [3]) and because they would not "change the prior determination" (CPLR 2221 [e] [2]). Moreover, the interests of justice do not require otherwise. 
Defense counsel's explanation for failing to raise the newly proffered facts in the initial motion to dismiss does not constitute a "reasonable justification" (see CPLR 2221 [e] [3]). Parties seeking renewal must demonstrate that their newly proffered facts could not have been previously discovered with due diligence (see Chelsea Piers Mgt. v Forest Elec. Corp., 281 AD2d 252, 252 [1st Dept 2001] ["Renewal is not available as a 'second chance' for parties who have not exercised due diligence"]). Even before the recent amendments to CPL § 245.50, due diligence prior to filing a COC challenge entailed thoroughly reviewing the discovery provided, investigating any apparent deficiencies, and communicating with the prosecuting ADA as necessary.
The defendant could have raised the bulk of her new arguments if defense counsel had exercised due diligence. Defense counsel insists that he thoroughly reviewed all the discovery in this case before filing the initial COC challenge, so he must have known that the People had subpoenaed medical records in February. He also must have known that as of April 14, 2025, the date of the motion to dismiss, he had not received any medical records from the People. Thus, defense counsel had actual notice of a potential discovery lapse. He does not explain in his affirmation why he did not investigate the matter or even notify the ADA of the possible issue prior to the initial filing (see McKinney's CPL 245.50 [4] [b] [eff. May 2022]). If defense counsel had asked the People about the hospital records prior to filing the initial motion, he would have learned that the People had received them and provided them to the court for review. If he had asked the People about the FDNY records, he would have learned that the People had not received them and had not taken steps to enforce the subpoena. A simple phone call would have enabled the defendant to raise these issues in her initial COC challenge. In fact, even without such a phone call, the defendant could have argued in her initial motion, as she argues now, that the People's efforts to obtain the records prior to filing their COC were belated and insufficient (see CPL 245.20 [2]). The defense, however, took no apparent steps to investigate or raise these potential issues — which were clear on the face of the People's filings — prior to the initial COC challenge, and they are therefore foreclosed from doing so on a motion to renew (see CPLR 2221 [e] [3]).
Regardless, there is no chance that defendant's newly proffered facts would have changed the outcome of the initial motion (see CPLR 2221 [e] [2]). The central question in a COC challenge is whether the People "exercised due diligence . . . prior to filing the COC" (People v Bay, 41 NY3d 200, 204 [2023] [emphasis added]). The defendant's newly proffered facts either reflect positively on the People's pre-COC diligence or are wholly irrelevant to the question, and thus they could not have changed the outcome of the defendant's prior motion. 
First, the People's handling of the hospital records prior to the filing of their COC was diligent and reasonable. As the People admit, the People briefly had possession of the hospital records on February 25, 2025 before relinquishing them to the court for review. The defendant argues that the People's brief possession of the records triggered their duty to disclose the records to the defense, and that their decision to divest themselves of the records was legally unjustified. This court disagrees. The hospital records were not in the People's "possession, custody or control" when they filed their March 5 COC (CPL 245.20 [1]), and the People's representation that the records were "unavailable" was true until such point as the court [*4]completed its review of the records and released them. It is standard practice in this courthouse for the People to redirect subpoenaed materials to the court when the materials are erroneously provided directly to them, and it is the standard practice for good reason. A subpoena is "a mandate of the court issued for the court" (People v Natal, 75 NY2d 379, 385 [1990]), and the court — not the issuing party — has "the right to possession of the subpoenaed evidence" (CPL 610.25 [1]). The court plays an important role in ensuring that the subpoena process is not abused, and parties issuing subpoenas should not encourage or allow the court's role to be circumvented (see Natal, 75 NY2d at 385). 
The People's efforts to fulfill their obligations to the court do not detract from their diligence in meeting their discovery obligations. Even if the defendant is right that the People had no strict legal obligation to relinquish the subpoenaed materials to the court, it does not follow that their decision to do so cuts against them in the court's analysis of their diligence. An error that is made in good faith and that is reasonable under the circumstances will typically not count against the People under Bay. Here, the People's "error" — to the extent it can be called that at all — was the result of diligent, conscientious, and reasonable efforts to meet the People's various legal obligations. It would not be a negative factor in this court's analysis under Bay, and therefore it cannot form the basis for a motion to renew (see CPLR 2221 [e] [2]).
The defendant further argues that the ostensible subpoena returns were in fact not subpoena returns at all — unbeknownst to the People, the court, and, most likely, the hospital who received and responded to the subpoena. The defendant argues, essentially, that the People's subpoena was improper under CPLR § 3122 (a) (2), and therefore that the hospital did not send the records as subpoena returns but rather as a response to a request for records authorized by the complainant's HIPAA release. Thus, the defendant concludes, the People should not have treated the records as subpoena returns at all and erred in submitting them to the court. This argument is at odds with the pragmatic and flexible approach to COC analysis announced in Bay and now codified in CPL § 245.50 (5). But it is also a misreading of CPLR § 3122 (a) (2). That subdivision states that a medical provider need not respond to an attorney-issued subpoena duces tecum if it "is not accompanied by a written authorization by the patient" (id.). This subpoena, however, was accompanied by such an authorization, as the defendant acknowledges. Thus, even though the subpoena was not "issued by a court," the medical provider was required to comply with it (id.).
Of course, the People's subsequent failure to "expeditiously . . . disclose" the hospital records to the defendant was a violation of their discovery obligations to the defense (see CPL 245.60). This discovery violation, however, occurred after the People filed their COC, and it has no bearing on their "due diligence . . . prior to filing the COC" (Bay, 41 NY3d at 204 [emphasis added]). At times, the People's post-COC diligence (or lack thereof) may be relevant to the validity of their COC, but that is only true to the extent that it sheds light on their diligence prior to filing, which is the ultimate question under Bay (id.). Here, where the People made sufficient efforts to obtain the hospital records prior to filing their COC, their post-COC delay in disclosure has no logical bearing on their initial diligence in obtaining and producing discovery.
Similarly, the People's post-COC handling of the FDNY records has no bearing on their pre-COC diligence and thus does not affect the validity of their COC. The People made sufficient efforts to obtain the FDNY records, which were not in their possession, prior to filing their COC (see CPL 245.20 [2]). The defendant essentially conceded as much — or at least waived any argument to the contrary — by failing to raise the issue in her initial motion to [*5]dismiss. The defendant argues, however, that the People's post-COC failure to enforce their subpoena is incompatible with due diligence, suggesting that the People should have gone so far as to move to have the FDNY held in contempt. Again, even if the defense is correct that the People had some obligation to take further action — which this court does not decide — the failure to do so after they filed their COC in this case has no bearing on their diligence prior to filing their COC (see People v Radford, 237 AD3d 1511, 1512-1513 [4th Dept 2025], lv denied, 43 NY3d 1048 [2025]). 
Overall, because the defendant has not offered "new facts . . . that would change the prior determination" and has not provided "reasonable justification for the failure to present such facts on the prior motion," she has not satisfied the requirements of a motion to renew (CPLR 2221 [e]; see also Chelsea Piers Mgt. v Forest Elec. Corp., 281 AD2d 252, 252 [1st Dept 2001]). The court may nevertheless entertain a motion to renew in the interest of justice (Mejia v Nanni, 307 AD2d 870 [1st Dept 2003]), but here, the interests of justice do not militate in favor of renewal. The defendant is unlikely to prevail upon renewal, and denial of the motion does not frustrate judicial interests in fairness or efficiency. 
Accordingly, the defendant's motion to renew her motion to strike the People's March 5 COC is denied.
III. CPL § 30.30
In this case, in which the defendant is charged with an A misdemeanor and no felonies, the People must be ready for trial within ninety days of the commencement of the criminal action (CPL 30.30 [1] [b]). This court previously determined that the People were charged with eighty-nine days between the defendant's arraignment on December 5, 2024 and the filing of the People's COC and COR on March 5, 2025, and that all time between March 5 and June 3, 2025 was excludable. Because this court has denied the defendant's motion to renew, that analysis stands.
Next, the adjournment from June 3, 2025 to July 16, 2025 is excluded. The People validly stated ready for trial on March 5, 2025, and thus may only be charged with subsequent delay that is "attributable to their inaction and directly implicates their ability to proceed to trial" (People v Brown, 28 NY3d 392, 404 [2016]). On June 3, the court rendered a decision on the defendant's motion and set a trial date. That delay is not attributable to any inaction on the People's part. Further, the defendant's suggestion that the People reverted to a state of unreadiness at some point during this adjournment because of alleged violations of their continuing duty to disclose is foreclosed by People v Radford, 237 AD3d 1511, 1513 (4th Dept 2025), lv denied, 43 NY3d 1048 (2025). 
The adjournment from July 16, 2025 to September 11, 2025 is also excluded. The People had validly answered ready for trial on March 5, 2025, and on July 16 they remained in a postreadiness posture (see Brown, 28 NY3d at 404). The adjournment is also excludable under CPL § 30.30 (4) (a) and (b) as an adjournment granted at the defendant's request for the purpose of motion practice. While the People missed their court-ordered deadline for filing their opposition and did not request an extension until three days after the deadline, that mistake has not resulted in any actual delay in the resolution of the motion and is therefore not chargeable to the People (People v Austin, 115 AD3d 1063, 1064 [3d Dept 2014]; see also People v Worley, 66 NY2d 523, 528 [1985]). 
The People are therefore charged with a total of eighty-nine days, which is within their ninety-day limit (CPL 30.30 [1] [b]). The defendant's motion to dismiss is therefore denied.
This constitutes the decision and order of this court.
Dated: September 10, 2025
New York, NY
Ilona B. Coleman, J.C.C.